UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EMPIRE FIRE AND MARINE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | 1:04-cv-0021-JDT-TAB |
| JAMES F. SARGENT; RANDY McVEY, as personal representative of the ESTATE OF RACHEL S. McVEY; KAREN RITCHIE; B.M., a minor, by Her Parent and Next Friend, RANDY McVey; and M.M., a minor, by her Parent and Next Friend, KAREN RITCHIE, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 37, 46)**[1]

This case involves a dispute over car insurance coverage provided by a policy purchased by Defendant James F. Sargent from Plaintiff Empire Fire and Marine Insurance Company when Mr. Sargent rented a car from Enterprise Rent-a-Car. The parties have filed cross-motions for summary judgment seeking a declaratory judgment determining the rights of Mr. Sargent and Defendants Karen Ritchie and M.M. under the policy and Indiana law.

**I.    FACTS**

This case arises from a motor vehicle accident that occurred on August 29, 2003. Many of the facts of the accident are not in dispute. Defendant Karen Ritchie was driving her car accompanied by her daughters, Defendants M.M. and Rachel McVey (who was nine months

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

pregnant at the time and scheduled to give birth the next day), and her granddaughter B.M.  Ms. Ritchie's car was struck head-on when a car driven by Mr. Sargent that he had rented from Enterprise Rent-A-Car Company of Kentucky ("Enterprise") crossed the center line of a highway.  Tragically, Ms. McVey was killed, and Ms. Ritchie, M.M. and B.M. were seriously and traumatically injured.  It appears undisputed defendants suffered damages in excess of $1,000,000, although the exact amount has not been established.

Crystal Hall was the Enterprise agent who rented the car to Mr. Sargent from its location in Madison, Indiana, on August 29, 2003.  The rental was memorialized through Enterprise Rental Agreement Number 036711 (the "Rental Agreement" or "Agreement").  Enterprise's self-insurance affords renters with limited personal liability coverage in the amount of $25,000 per person/$50,000 per accident.  In addition to this standard coverage, Mr. Sargent purchased Supplemental Liability Protection Policy Number SI226451 ("SLP Policy" or "Policy") with a liability limit of $1,000,000.  In selling the Policy, Ms. Hall represented that the insurance would generally cover Mr. Sargent for any accident in which he was involved.  However, she admittedly did not specifically explain the details of the SLP Policy or the Rental Agreement.  The terms of the Policy and the Rental Agreement are not disputed and copies of them are attached as Attachments 2 and 7 to Plaintiff's Designation of Evidence Regarding Brief/Memorandum in Support of Motion filed by Empire (Docket No. 39), respectively.

In the approximately twenty-four hours prior to renting the car, Mr. Sargent had consumed a large amount of alcohol, including twenty-six to twenty-eight beers and four to six ounces of Jim Beam.  He had eaten only once during that period.  Mr. Sargent's blood alcohol level at the time of the accident was .193, well beyond the legal limit for a auto driver in the state of Indiana.  He pled guilty to operating a vehicle while intoxicated in addition to other crimes, and was sentenced to more than eleven years in prison.

## II. PROCEDURAL BACKGROUND

As a result of what it contends to be Mr. Sargent's violation of the SLP Policy and the Rental Agreement, Empire refused to defend and indemnify him for the claims that have arisen as a result of the accident. On January 7, 2004, Empire brought this action seeking a declaratory judgment defining Defendants' rights under the Policy. On April 4, 2005, Empire filed its Motion for Summary Judgment, asserting that it is entitled to a declaratory judgment that Defendants are not entitled to any liability coverage under the SLP Policy. The essence of Empire's argument is that coverage is unavailable here because Mr. Sargent's drinking and driving triggered an exclusionary clause in the Policy.

On June 8, 2005, Defendants James Sargent, Karen Ritchie and M.M. filed their Cross-Motion for Summary Judgment. In it, they assert that they are entitled to coverage under the SLP Policy because its exclusions render its coverage illusory and unconscionable, and therefore the Policy must be interpreted in their favor, allowing for coverage. The motions are now fully briefed. While the parties request that the court hear oral argument on the issues at hand, after careful review, the court concludes that oral argument would not assist in its determination, and rules as follows.

## III. DISCUSSION

### A. Standard of Review

Construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind. Ct. App. 1995). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56, *ITT Indus. Credit Co. v. D.S. Am., Inc.*, 674 F. Supp. 1330, 1331 (N.D. Ill. 1987), and the traditional rules for summary judgment will apply even though both parties have moved for summary judgment.  *Blum v. Fisher & Fisher*, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997).

      B.      **Supplemental Liability Protection Policy**

An Enterprise brochure describes SLP Policy coverage as follows:

> Optional Supplemental Liability Protection (SLP) provides Renter with minimum financial responsibility limits as outlined in the applicable motor vehicle financial responsibility laws of the state where Vehicle is operated AND excess insurance provided by Empire Fire and Marine Insurance Company, which supplies Renter . . . with third-party liability protection with a combined single limit per accident equal to the difference between the minimum financial responsibility limits set forth above and $1,000,000 Combined Single Limit per accident.

(Enterprise Rent-A-Car Summ. of Coverage Brochure, Pl.'s App. Attach. 5.)  The Policy itself allows for excess car liability insurance for a "loss" involving "bodily injury" and "property

damage" caused by an "accident" and resulting from the use of a covered "rental vehicle."  Empire agreed to indemnify any "insured" for such "loss" in excess of the "underlying insurance" for which this coverage applied during the "coverage period," provided its liability applied only to the "ultimate net loss" in excess of such "underlying insurance."

Insurance policies are contracts that are subject to the same rules of construction as other contracts.  *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind. Ct. App. 1995).  An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms.  *Id.*  An insurance contract is not regarded as ambiguous simply because controversy exists and the parties have asserted contrary interpretations of the language of the contract*.  Puryear v. Progressive N. Ins. Co.*, 790 N.E.2d 138, 139-40 (Ind. Ct. App. 2003).

No party contends that the terms of coverage of the SLP Policy are ambiguous.  Nor is it disputed that Mr. Sargent is the "insured" within the definition of the Policy and Rental Agreement, or that he suffered a "loss" involving "bodily injury" and "property damage" caused by an "accident" resulting from the use of a covered "rental vehicle" during the "coverage period."  The principle question then is whether one of the exclusionary clauses contained in the SLP Policy or the Rental Agreement exclude the coverage at issue.  Particularly relevant here is the Policy's drinking and driving exclusion.

**C.    Drinking and Driving Exclusion**

The SLP Policy contains an exclusion of coverage for any loss arising out of an "accident" that occurs while the "insured" is under the influence of alcohol or drugs, or other substances unless prescribed by a physician.  It also excludes coverage for any loss arising out of the use of a "rental vehicle" when such use is in violation of the terms and conditions of the "rental agreement."  The Rental Agreement describes one violation of the insurance contract as ". . . if there is reasonable evidence [the Renter was] under the influence of narcotics, intoxicants, or drugs."  (Hall Dep. Ex. 1.)

While insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions, *American Family Mutual Insurance Co. v. Federated Mutual Insurance Co.*, 775 N.E.2d 1198, 1206 (Ind. Ct. App. 2002), to be enforced these limitations must be clearly expressed.  *West Bend Mut. v. Keaton*, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001).  Looking at the terms of the drinking and driving exclusion contained within the SLP Policy, the court concludes that they are clearly expressed and unambiguous.  Solely from applying the Policy's plain and ordinary meaning, it would appear that the drinking and driving exclusionary clause unambiguously precludes coverage here.  "[A]n unambiguous exclusionary clause is generally entitled to enforcement."  *Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 337 (Ind. App. 1993) (citing *City of Muncie v. United Nat'l Ins. Co.*, 564 N.E.2d 979 (Ind. App. 1991)).  But the court's inquiry cannot end there.  An insurance company may indeed limit its liability in such a manner, but only when done consistent with public policy.  *Id.*

        **D.**      **Do the Policy Exclusions Render the Policy's Coverage Illusory?**

Defendants contend that while the drinking and driving exclusionary clause may unambiguously preclude coverage here, it is unenforceable because other exclusionary clauses in the SLP Policy render its coverage illusory. They state that "[u]nfortunately, there are no circumstances under the SLP that would give rise to coverage due to the provisions in the SLP and Rental Agreement that excluded negligence and negligence *per se* in all circumstance[s], the very coverage that was reasonably expected by Sargent when he purchased the coverage." (Br. Supp. Cross-Mtn. Summ. J. 10.) In so arguing, defendants point to two particular exclusions that they contend render the SLP Policy coverage illusory: the "any illegal purpose" exclusion and the "imprudent manner" exclusion.

The SLP Policy specifically limits coverage for any violation of the Rental Agreement. As for the illegal purpose exclusion, ¶ 13(b) of the Agreement defines one such violation as when the rental car is used or driven "for any illegal purpose, in a race, speed contest, to tow a vehicle or trailer." (Pl.'s Designation of Evidence Regarding Br./Mem. Supp. Mot. Attach. 7.) As for the imprudent manner exclusion, ¶ 13(j) of the Rental Agreement defines that violation as when the rental car is used or driven "in a reckless or imprudent manner or if the car is deliberately damaged." (*Id.*)

Empire is not refusing coverage under the SLP Policy under either of these exclusions. It expressly states that "Empire Fire, in fact, does not rely upon Paragraphs 13(b) or 13(j) of the rental agreement at all." (Reply Br. Supp. Pl.'s Mot. Summ. J. 9.) Instead, it argues that coverage under the SLP Policy is excluded under ¶ 13(c), the drinking and driving exclusion previously discussed.

7

An insurance contract must be construed as a whole. *Pennington v. Am. Family Ins. Group,* 626 N.E.2d 461, 464 (Ind. Ct. App. 1993). Construction of a contract as a whole requires reading beyond isolated phrases, and unclear terms can be clarified by reading the entire contract. *Id.* Selected clauses of an insurance contract, even if they themselves are invalid, do not necessarily render the entire policy illusory. *Id.* In this case, to rule that the two selected exclusionary clauses Defendants question render the entire SLP Policy invalid would be to allow select provisions of the Policy to overshadow its effect in total, or its application to the facts here. To be sure, Defendants do not question the validity of the exclusionary clause at the center of this case–the drinking and driving exclusion. Because this exclusion is valid, the court is not required to address whether the two specific exclusions Defendants contest are in fact illusory.[2]

---

[2] If this question had been reached, it is most likely that these provisions would not have caused the Policy to be illusory. An insurance policy is considered illusory in Indiana only if "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Meridian Mut. Ins. Co. v. Richie*, 540 N.E.2d 27, 30 (Ind. 1989). "Where an otherwise unambiguous insurance clause provides only illusory coverage when construed within the insurance contract in its entirety, the courts of this state will enforce the provision so as to give effect to the reasonable expectation of the insured." *Landis v. Am. Interinsurance Exch.*, 542 N.E.2d 1351, 1354 (Ind. Ct. App. 1989).

The exclusions at issue in this case do not appear, under any interpretation including that most favorable to defendants, to leave Mr. Sargent with only illusory coverage. The exclusions do not render the possibility of coverage hypothetical or even remote; instead, the coverage could have been in force under any number of reasonably expected set of circumstances. This includes a scenario in which Mr. Sargent was not intoxicated while he was driving and if he had driven within the parameters of the law. Indeed, while the SLP Policy excludes any illegal or imprudent acts, these are not the equivalent to negligent acts, nor are they defined specifically as such in the Policy. Had the Policy so stated, a different result may have been dictated. *See, e.g., Liberty Mut. Ins. Co. v. Tabor*, 553 N.E. 2d 909, 912 (Mass. 1990) (in finding that an exclusion of "negligent" acts is illusory, the court stated: "[a] provision in an insurance policy that negates the very coverage that the policy purports to provide in the circumstances where the person is liable is void as against public policy."). But that was not the case here.

(continued...)

### E. Are the Policy Exclusions Unconscionable?

As an alternative argument for allowing coverage here, Defendants suggest that the court's enforcement of the SLP Policy would be unconscionable. In support, they argue that Empire's superior bargaining power, coupled with Mr. Sargent's failure to read the terms of the Policy (and indeed, his contended inability to do so) suggest that it would be unconscionable for the court to enforce the Policy against Defendants.

"An 'unconscionable contract' has been defined to be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Stiefler v. McCullough*, 174 N. E. 823 (Ind. App. 1933). "The basic test of unconscionability is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-side[d] as to be unconscionable under the circumstances existing at the time of the making of the contract." *Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971). A contract is not unenforceable as unconscionable merely because one party enjoys advantages over another. *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.*, 412 N.E.2d 129, 131 (Ind. App. 1980).

The terms of the SLP Policy are not so one-sided as to be unconscionable under the circumstances existing at the time of the making of the insurance contract. The

---

[2](...continued)
Additionally, if the exclusionary clauses at issue are not illusory, the court would not need to address Defendants' reasonable expectations argument. However, if it were to take up the issue, the court would likely find that any expectation Mr. Sargent had that the SLP Policy would cover any accident caused by his driving while intoxicated to be unreasonable.

Policy terms clearly and unambiguously exclude coverage for drinking and driving.  If Mr. Sargent had read the Rental Agreement, the Enterprise brochure detailing the coverage or the summary of the SLP Policy itself, he would have been adequately informed that he did not have "coverage for negligently causing injury in the operation of the rental vehicle while under the influence of alcohol," as Defendants contend.  An insured who takes the time to check on his or her rights should understand that driving a rental car while under the influence of alcohol is typically a prohibited use that voids an insurance contract, and indeed was such a prohibited use in this particular instance.  Furthermore, even if Mr. Sargent is not the "best reader the world" and could not comprehend the terms of the Rental Agreement or the SLP Policy itself, he could have asked to have his rights under the Policy described to him.

Which was in fact done in this case.  When Mr. Sargent rented the car, Ms. Hall informed him that he would not have coverage if he used the car for an illegal purpose.  She testified that she told Mr. Sargent that he "would not be covered . . . if [he] decide[d] to perform illegal acts."  (Hall Dep. 24:1-5.)  Moreover, it is undisputed that Ms. Hall told Mr. Sargent not to drink and drive, and Mr. Sargent understood this admonishment.  (Sargent Dep. 82, 102.)  Whether Ms. Hall knew or should have known that Mr. Sargent was intoxicated is immaterial.

While Mr. Sargent contends that there is some issue of fact as to the tone Ms. Hall took when she informed him not to drink and drive, this factual issue is also immaterial to the analysis here.  Assuming for purposes of summary judgment that Ms. Hall told Mr. Sargent that the SLP Policy would cover drinking and driving, or implied

such by "laughing" or otherwise, this clearly contradicts the exclusions contained in the Policy itself. There was obvious documentation in the Policy, the Rental Agreement and other Enterprise brochures that should have clearly put Mr. Sargent on notice, prior to obtaining the car, that the Policy purchased to cover liability for negligent driving did not cover all types of negligent driving, including driving while intoxicated. The contract terms here could be easily understood by the average customer checking coverage, and thus it was not reasonable for Mr. Sargent to expect liability coverage for an accident that he caused because he was driving under the influence. Moreover, Mr. Sargent was not compelled in any way to purchase coverage in spite of the inclusion of a drinking and driving exclusion in the SLP Policy.

This finding comports with similar cases from other jurisdictions holding that drinking and driving exclusions are not necessarily unconscionable. *See, e.g., Phila. Indem. Ins. Co. v. Carco Rentals, Inc.*, 923 F. Supp. 1143 (W.D. Ark. 1996) (holding that a drinking and driving exclusion in an excess liability coverage policy did not violate Arkansas' public policy); *Hertz Corp. v. Home Ins. Co.*, 14 Cal. App. 4th 1071 (Cal. App. 1993) (holding that because excess liability coverage is entitled to broader exemptions and exclusions than primary coverage, a conspicuous and unambiguous drinking and driving exclusion is enforceable therein); *Pub. Employees Mut. Ins. Co. v. Hertz Corp.*, 800 P.2d 831 (Wash. App. 1990) (holding that the drinking and driving exclusion in the rental car company's liability policy did not violate Washington's public policy because the prohibitive exclusion was directly related to an increased risk incurred by the rental

company as a self-insurer).  Therefore, the court concludes that the terms of the SLP Policy are not unsconscionable and may be enforced.

## IV.     CONCLUSION

In reaching these conclusions, the court regrets that the outcome is not more favorable to Ms. Ritchie and M.M., both of whom presumably tragically suffered a great deal because of Mr. Sargent's reckless and deplorable actions.  However, this court is duty-bound to follow the terms of the law, including Indiana's binding precedent, as well as the clear terms of the Policy, which compel this result.  Therefore, for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Docket No. 37) is **GRANTED** and Defendants' Cross-Motion for Summary Judgment (Docket No. 46) is **DENIED.**

ALL OF WHICH IS ENTERED this 6th day of October 2005.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Dean J. Arnold
Nunn Law Office
deanarn@kiva.net

David W. Craig
Craig Kelley & Faultless
dcraig@ckflaw.com

Thomas E. Farrell
Scopelitis Garvin Light & Hanson
tfarrell@scopelitis.com

Scott Anthony Faultless
Craig Kelley & Faultless
sfaultless@ckflaw.com

Betsy Katherine Greene
Greene & Schultz
bkgreene@kiva.net

Brian Edward Hicks
Griffin Hicks & Hicks
br.hicks@voyager.net

Lynne D Lidke
Scopelitis, Garvin, Light & Hanson, P.C.
llidke@scopelitis.com